


UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE A. PATTERSON,<br><br>    Plaintiff,<br><br>    v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of the Social<br>Security Administration,<br><br>    Defendant. | NO. EDCV 04-00098-SS<br><br>MEMORANDUM DECISION AND ORDER |

Plaintiff brings this action seeking to overturn the decision of the Commissioner of the Social Security Administration (hereinafter "Defendant," "Commissioner," or the "Agency") denying her application for Supplemental Security Income Benefits. Alternatively, she asks for a remand. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. This matter is before the Court on the parties' Joint Stipulation filed on June 1, 2005. For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

\\\

\\\

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

## PROCEDURAL HISTORY

In July 2002 and June 2003 respectively, Plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (Administrative Record ("AR") 64, 311) and for Supplemental Security Income disability benefits ("SSI") under Title XVI.[1] Plaintiff alleged a disability onset date of July 15, 2002 (AR 328) on the bases of back and leg pain. (AR 330).

The Agency denied Plaintiff's applications initially and upon reconsideration. (AR 10, 28, 33). Plaintiff requested a hearing by an Administrative Law Judge ("ALJ"). (AR 37). On January 3, 2004, ALJ David M. Ganly conducted a hearing, at which Plaintiff appeared with counsel and testified. A vocational expert also testified. (AR 316-54).

The ALJ issued a decision denying benefits on April 28, 2004. (AR 8-13). Plaintiff sought review of this decision before the Appeals Council. On June 17, 2004, the Appeals Council denied review and the ALJ's decision became the final decision of the Commissioner. (AR 4). Plaintiff commenced the instant action on August 21, 2004.

\\\

\\\

---

[1] Title II of the Social Security Act is codified at 42 U.S.C. §§ 401-434 ("Federal Old-Age, Survivors, and Disability Insurance Benefits"). Title XVI is codified at 42 U.S.C. §§ 1381-1385 ("Supplemental Security Income for Aged, Blind, and Disabled"). Plaintiff also sought Disability Insurance Benefits under Title II of the Social Security Act on July 18, 2002.

**FACTUAL BACKGROUND**

A. <u>Plaintiff's Medical History</u>

Plaintiff was born on July 10, 1952 and was fifty-one years old at the time of the hearing. (AR 11). She has completed high school and has attended vocational school. (AR 80, 320). Plaintiff has also been taking courses in computer programming at Victor Valley College. (AR 320). Plaintiff has previous work experience as a resident aide, cashier, and receptionist. (AR 83, 320-22).

Plaintiff complained of lower back pain after lifting patients at her workplace on December 10, 1998. (AR 185). The following day, Plaintiff visited the emergency room at St. Mary Medical Center in relation to her work-related injury. Dr. Daniel L. Quion examined Plaintiff and diagnosed her with acute low back strain. (AR 187). He prescribed medication for Plaintiff's pain and ordered a follow-up examination with a private physician. (<u>Id.</u>).

Plaintiff was referred to Dr. Steven Roberts, who treated Plaintiff between February 2, 1999 and May 27, 1999 for her lower back pain. (AR 145). Following an examination of Plaintiff on February 2, Dr. Roberts diagnosed lumbosacral sprain. (AR 180). He noted that Plaintiff exhibited decreased range of motion in the spine as well as spasms and decreased sensation. (AR 179-80). Dr. Roberts ordered an MRI scan, and prescribed Vicodin. (AR 180). He also recommended physical therapy three times a week and scheduled a follow-up appointment. (AR 179-80). On February 23, 1999, Dr. Roberts issued an "Industrial Supplemental

Report" form where he noted lumbosacral and sacroiliac joint sprain. (AR 177). Furthermore, he opined that Plaintiff could only perform modified work. (Id.). He specified Plaintiff's limitations as including "[n]o prolonged standing, repetitive bending, stooping or lifting more than 5 lbs (occasionally) [and] no prolonged sitting." (Id.).

On October 7, 2000, Dr. Erik N. Zeegen, an orthopedic surgeon, examined Plaintiff at the request of the Agency. (AR 218-22). Dr. Zeegen found that Plaintiff had the ability to occasionally lift fifty pound objects and frequently lift twenty-five pounds. (Id.). He also found that Plaintiff could stand or walk for six hours in an eight hour workday, and could "bend or crouch frequently." (AR 221).

On November 3, 2002, orthopedic surgeon Dr. Warren David Yu also examined Plaintiff for a consultative evaluation at the Agency's request. (AR 232-35). Dr. Yu found no evidence of myelopathic signs.[2] (AR 235). He concluded that Plaintiff could occasionally lift fifty pounds and frequently lift twenty-five pounds. (Id.). Dr. Yu further stated that Plaintiff would be able to "sit, stand or walk for up to six hours."

On October 23, 2000, Agency physician Albert Lizarraras reviewed Plaintiff's medical records and found Plaintiff's exertional limitations

\\\
\\\

---

[2] "Myelopathic signs" indicate a disorder of the spinal cord. Stedmans Medical Dictionary 1171 (27th ed. 2000).

to be similar to those set forth by Dr. Zeegen. (AR 224). He ultimately assessed Plaintiff with a medium Residual Functional Capacity ("RFC").[3] (AR 228).

On January 2, 2003, Dr. Carmen DeLaRosa, a State Agency review physician, provided a RFC assessment. She found that Plaintiff could lift fifty pounds occasionally, twenty-five pounds frequently, and could sit, stand, or walk for about six hours in an eight hour day. (AR 274).

Plaintiff also saw several doctors at the Arrowhead Regional Medical Center between 1995 and 2003. (See generally 284-310). Plaintiff's examination records during that period revealed visits for various complaints such as blurred vision (AR 300), lower hip and back pain (AR 301), and neck pain (AR 307).

### B. Plaintiff's Testimony

At the hearing before the ALJ, Plaintiff testified that she lives at a friend's house with Plaintiff's husband. (AR 344). She stated that she cooks (AR 343) and takes two courses at Victor Valley College. (AR 320). Plaintiff asserted no other daily activities. (See AR 341-42) ("There's nothing else I can do besides stay home."). Plaintiff commutes to school by bus and explained that she has problems driving

---

[3] Residual functional capacity is "what [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a). A medium RFC indicates a functional capacity for "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

because of the pain in her leg. Thus, while Plaintiff has a valid California driver's license, she stated that her husband does most of the driving. (AR 338, 345). Plaintiff also testified that she has not worked full time since 1993 because she is too old and "over-qualified." (AR 327-28).

Plaintiff stated that she experiences pain in the lower right side of her body and that it radiates down to her right foot. (AR 330-31). She also testified that she has difficulty bending and kneeling, can only sit for fifteen to twenty minutes before feeling pain, and can only stand for five to ten minutes. Plaintiff also explained that she has difficulty lifting a "gallon of milk" with her right hand, but has no trouble doing so when using both hands. (AR 339-40).

C.  **The Vocational Expert's Testimony**

Ms. Sandra Fioretti, a vocational expert, testified at the hearing. The ALJ posed a hypothetical to Ms. Fioretti involving an individual who could (1) sit, stand or walk for six hours, (2) lift twenty pounds frequently, and (3) lift fifty pounds frequently. (AR 352). Given these restrictions, Ms. Fioretti asserted that Plaintiff could perform all of her past relevant work with the exception of the resident aide and construction positions. (Id.). The ALJ also posed a second hypothetical, involving an individual who could (1) sit, stand or walk for less than four hours, (2) lift ten pounds occasionally, and (3) occasionally bend or stoop. (Id.). Ms. Fioretti testified that such an individual could perform sedentary work that is less than full time. (AR 353).

      Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4) Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5) Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); 20 C.F.R. §§ 404.1520(b)-404.1520(f)(1) & 416.920(b)-416.920(f)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Bustamante, 262 F.3d at 953-54 (citing Tackett). Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity, age, education, and work experience. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(f)(1), 416.920(f)(1). The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids"). Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001) (citing

Tackett). When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000) (citing Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988)).

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process discussed above. At the first step, the ALJ observed that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of her disability. (AR 11). Next, the ALJ found that Plaintiff had severe musculoskeletal impairments. (Id.). At the third step, however, the ALJ observed that Plaintiff's impairments did not meet or equal any of the impairments appearing in the "Listing of Impairments" set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

In the fourth step of his analysis, the ALJ weighed the medical evidence in determining Plaintiff's residual functional capacity. (AR 11-12). The ALJ concluded that Plaintiff had an RFC for "medium work," which included the ability to lift or carry fifty pounds occasionally, twenty five pounds frequently, and to sit, stand or walk for six hours. (AR 11).

Having addressed Plaintiff's functional limitations, and based on testimony by the vocational expert, the ALJ concluded that Plaintiff could perform all of her past relevant work with the exception of her past work at the construction site and as a resident aide. (AR 11).

Consequently, the ALJ found that Plaintiff was not disabled at any time through the date of the decision. (AR 12).

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citing Tackett, 180 F.3d at 1097); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996) (citing Fair v. Bowen, 885 F.2d 597, 601 (9th Cir. 1989)).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720 (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. (citing Jamerson, 112 F.3d at 1066; Smolen, 80 F.3d at 1279). To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (citing Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21 (citing Flaten v. Sec'y, 44 F.3d 1453, 1457 (9th Cir. 1995)).

\\\
\\\

## DISCUSSION

Plaintiff contends that the ALJ erred by failing to consider the opinion of Dr. Roberts, her treating physician. (Joint Stipulation ("JS") at 3). Plaintiff also argues that the ALJ posed an incomplete hypothetical question to the vocational expert. (Id. at 5-6). As discussed below, the Court agrees that the ALJ improperly disregarded the opinion of Plaintiff's treating physician. Accordingly, remand for further administrative proceedings is necessary. The Court will be unable to determine whether the ALJ presented a proper hypothetical until such proceedings have taken place.

### A. The ALJ Failed to Consider the Treating Physician's Opinion and Did Not Give Specific and Legitimate Reasons for Rejecting that Opinion

On February 2, 1999, Dr. Roberts, Plaintiff's treating physician, opined that Plaintiff could only perform modified work. (AR 180). The opinion at issue here is the "Industrial Supplemental Report" form that Dr. Roberts completed on February 23, 1999. In that report, Dr. Roberts described Plaintiff's limitations as including "[n]o prolonged standing, repetitive bending, stooping or lifting more than 5 lbs (occasionally) [and] no prolonged sitting." (AR 177). Plaintiff argues that in issuing these restrictions, Dr. Roberts limited Plaintiff to modified work that is less than sedentary work. (JS at 3).

The Court typically attributes greater weight to the opinions of treating physicians because they are hired to treat the patient and

consequently have more opportunities to observe and interact with the individual. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended) (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)) (stating that more weight should be given to a treating source's opinion than that of a non-treating source). Even if contradicted, a treating physician's opinion may not be rejected without "specific and legitimate reasons" supported by substantial evidence in the record. Rollins v. Massanari, 261 F.3d 853, 856 (9th Cir. 2001) (citing Reddick, 157 F.3d at 725); Lester, 81 F.3d at 830 (citing Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983)).

In his decision, the ALJ discussed Plaintiff's medical history. The discussion included an extensive evaluation of the consultative physicians' opinions. (AR 11-12). The ALJ also noted progress reports by various other doctors between 1995 and 2003 indicating complaints such as eye pain and blurred vision. (AR 12). He mentioned a doctor's report completed during Plaintiff's visit to the emergency room in 1998 for her work-related back injury. (Id.). The ALJ also referenced a variety of Plaintiff's subjective complaints ranging from "shortness of breath" to hepatitis A. (AR 11-12). However, in spite of this comprehensive list, the ALJ nonetheless failed to note any of the treating physician's findings in the decision. Thus, the ALJ did not mention Dr. Roberts' statements regarding Plaintiff's work restrictions, nor did he provide the "specific and legitimate reasons" required for rejecting the treating physician's opinion.

\\\

While an ALJ is not required to discuss "every piece of evidence" in evaluating the evidence and developing the record, he must nevertheless discuss the probative evidence. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (quoting Black v. Apfel, 143 F.3d 383, 363 (8th Cir. 1998); see also Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (The Secretary ... need not discuss all evidence presented to her.  Rather, she must explain why 'significant probative evidence has been rejected.'") (citation omitted).  Dr. Roberts' restriction on prolonged sitting is probative because Plaintiff's job as a receptionist-which the ALJ found Plaintiff could perform-involves extended periods of sitting.  (See AR 323) (describing a receptionist's nature of work as sedentary).  It was thus error for the ALJ to disregard Dr. Roberts' restrictions without providing specific and legitimate reasons for doing so.

Defendant contends that Dr. Roberts' restrictions are not probative since the physician issued his opinion in 1999, prior to Plaintiff's alleged onset date of 2002.  (JS at 4).  However, as indicated above, the ALJ discussed other evidence that appears even less probative with respect to both the relevant time period and the subject matter.  For instance, the ALJ discussed medical evidence (from sources other than treating doctors) from years prior to 2002-and even prior to 1999.  (See AR 11-12) (noting that some of Plaintiff's complaints date back to the early 1990s).  The ALJ also noted Plaintiff's earlier complaints of vision and breathing problems.  (AR 11-12).  Nevertheless, he omitted any mention of Dr. Roberts' opinion regarding Plaintiff's primary complaint of back pain.  Furthermore, even if the ALJ found that Dr. Roberts' opinion was not probative, the ALJ failed to articulate this

as a reason for rejecting the treating physician's opinion. As such, it would constitute legal error to affirm the ALJ's decision based on reasons the ALJ did not discuss. See Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003) (citing SEC v. Chenery Corp., 332 U.S. 194, 196, 67 S. Ct. 1575, 91 L. Ed. 1995 (1947)) (courts are constrained to review the reasons the ALJ asserts, not the reasons the ALJ could have given).

### B. Plaintiff's Remaining Contention Implicates the Need for Full and Fair Consideration of the Treating Physician's Opinion

Plaintiff's remaining contention implicates the need for full consideration of the treating physician's opinion, for which this case is being remanded. Plaintiff contends that the ALJ posed an incomplete hypothetical question to the vocational expert. (JS at 5). More specifically, she asserts that the ALJ improperly omitted the limitations that Dr. Roberts expressly recommended. (Id.). In presenting a hypothetical question to the vocational expert, an ALJ must set out all the limitations and restrictions of a particular claimant. Magallanes, 881 F.2d at 756 (citing Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988)). However, the ALJ's hypothetical question was grounded on his insufficient consideration of the treating physician's opinion, the error which is described above. Consequently, the Court need not reach Plaintiff's remaining argument. On remand, the ALJ shall redetermine the concerns raised by Plaintiff relative to the ultimate weight assigned to Dr. Roberts' opinion.

\\\
\\\
\\\

CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[5] IT IS ORDERED that judgment be entered REVERSOMG the decision of the Commissioner and REMANDING this matter for further proceedings consistent with this decision. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 15, 2005.

SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

---

[5]  This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."